**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**JOHN L. BOWDEN,**

                **Plaintiff,**

    - against -

**WARDEN DUFFY, ET AL.,**

                **Defendants.**
------------------------------------

**13 Civ. 717 (JGK)**

**MEMORANDUM OPINION**
**AND ORDER**

**JOHN G. KOELTL, District Judge:**

    The pro se plaintiff, John Bowden, brings this action pursuant to 42 U.S.C. § 1983, seeking damages and injunctive relief against defendants City of New York, Warden Edmund Duffy, Captains Santapaola, Smith, and Wynn, and Correction Officers ("COs") Camacho and O'res.  Bowden alleges that his First, Fourth, Eighth, and Fourteenth Amendment rights have been violated as a result of discriminatory harassment from correction officers and their failure to protect him from other inmates.  The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons explained below, the defendants' motion to dismiss is granted and the plaintiff's claims are dismissed without prejudice and with leave to replead.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius,

618 F.3d 162, 170 (2d Cir. 2010) (brackets and internal quotation marks omitted). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Barnes v. Pozzi, No. 10 Civ. 2554, 2012 WL 3155073, at *1 (S.D.N.Y. Aug. 3, 2012).

II.

The following factual allegations are taken from the plaintiff's Amended Complaint ("Complaint"), and are assumed to be true for the purposes of this motion to dismiss.

The plaintiff alleges that from June 2012 until January 2013 he was harassed by various COs and inmates at a detention center on Riker's Island. (Am. Compl. at 3.)

A.

The plaintiff contends that CO Camacho made persistent disparaging remarks to him in front of other inmates about his sexual orientation. (Am. Compl. at 3, 5.) Among these were

disparaging questions regarding the plaintiff's relationship with his partner, offensive jokes, and other insults. (Am. Compl. at 3, 5.) The plaintiff also alleges that CO Camacho encouraged other inmates to join in the harassment, and that this encouragement led to other inmates verbally abusing him, spitting on him, throwing urine on him, physically assaulting him, and demanding that he perform sexual acts upon them. (Am. Compl. at 3, 5.)

The Complaint alleges that CO Camacho supervised the plaintiff's work at the commissary, and was also responsible for job assignments in the detention center. (Am. Compl. at 5-6.) The plaintiff details various sexual insults made by CO Camacho during the plaintiff's time at the commissary. (Am. Compl. at 5-6.) For example, during a daily strip search, CO Camacho allegedly insulted the plaintiff with a sexual comment. (Am. Compl. at 6.) The plaintiff alleges that he quit his job in the commissary after three and a half months because of the abuse. (Am. Compl. at 6.)

B.

The Complaint also describes multiple abusive incidents that occurred between the plaintiff and other inmates at the prison, which, the plaintiff alleges, were reported to COs in

4

the prison, who took no action to protect him or prevent the abuse.

On one such occasion, the plaintiff alleges that he was stopped by a group of inmates on a staircase between housing areas, surrounded, and pressured to perform oral sex.  (Am. Compl. at 6.)  On another occasion, the plaintiff's cellmate attempted to pressure the plaintiff into performing oral sex "through intimidation and physically punch[ing him] in [his] face."  (Am. Compl. at 6.)

The plaintiff alleges that he reported these two incidents to Captain Stantapaola, and that Captain Santapaola took no action to isolate the plaintiff, because the plaintiff was unwilling to divulge the names of the inmates who were abusing him for fear of retaliation.  (Am. Compl. at 6.)

C.

The plaintiff also alleges that on one occasion, CO O'Res told him that he was to move to a new housing area.  (Am. Compl. at 7.)  When the plaintiff informed CO O'Res that the inmates who had threatened him on the staircase lived in this housing area, CO O'Res stated, "You don't like whats [sic] happening? Don't come to jail; you're still moving."  (Am. Compl. at 7.)  Eventually, the supervising captain stopped the move.  (Am.

5

Compl. at 7.) However, on subsequent occasions CO O'Res informed the plaintiff that he would have to move, only to have the move stopped at the last minute by the supervising captain. (Am. Compl. at 7.) The plaintiff alleges that CO O'Res did this in order to see his fear and distress at the prospect of having to move. (Am. Compl. at 7.)

### D.

The Complaint also alleges that the plaintiff served as a witness in a homicide case, and that he was later identified in the prison as a "snitch." (Am. Compl. at 7.) After this happened, other inmates began verbally harassing him, and one inmate spit on him. (Am. Compl. at 7.) The plaintiff reported this harassment to Captain Wynn and requested protective custody, but Captain Wynn took no action. (Am. Compl. at 7.)

### E.

The plaintiff contends that he also requested protective custody by submitting a report to Captain Smith—who, according to the Complaint, is the "Grievance Supervising Captain"—in which he stated that urine had been thrown on him, that he had been punched in the face, that CO Camacho had been tormenting

him, and that he feared for his safety. (Am. Compl. at 7.) When the plaintiff refused to exclude CO Camacho's name from the report, Captain Smith refused to act. (Am. Compl. at 7.)

F.

The Complaint also mentions a third grievance report, submitted by the plaintiff on September 1, 2012 to the Grievance Department, concerning the abuse and specifically naming CO Camacho as having been involved. (Am. Compl. at 8.) When the plaintiff did not receive a response from the Grievance Department, he submitted a letter to Warden Duffy explaining the abuse he had suffered and enclosing the September 1, 2012 grievance report. (Am. Compl. at 8.) He received no response from the warden. (Am. Compl. at 8.)

G.

Construing the plaintiff's pro se Complaint broadly, as required, it can be read to allege the following claims: 1) a § 1983 claim against CO Camacho for violating his Eighth Amendment right to be free from cruel and unusual punishment by verbally harassing him; (2) a § 1983 claim against all defendants for violating his Eighth Amendment right against

7

cruel and unusual punishment by failing to protect him from other inmates;[1] (3) a § 1983 claim against CO Camacho for violating his Fourth Amendment right to be free from unreasonable searches arising from CO Camacho's strip search; (4) a § 1983 claim against all defendants for violating his First Amendment right to freedom of speech by interfering in the prison grievance process; and (5) a § 1983 claim against the City of New York for violating his Fourteenth Amendment right to due process arising from the loss of his job in the commissary. The plaintiff seeks monetary damages and injunctive relief.

IV.

The plaintiff's claim against CO Camacho for verbal harassment must be dismissed.

---

[1] The defendants rely on Eighth Amendment cases in arguing for dismissal of the plaintiff's claims of mistreatment by officials at the detention center.  The Eighth Amendment is inapplicable to claims by pre-trial detainees—"[i]nstead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody." Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009) (citations omitted).  The plaintiff does not specify whether he is a pre-trial or a post-trial detainee, but this is of no consequence to the present motion, because for all relevant purposes the standards under the Eighth Amendment and the Fourteenth Amendment are the same. See id. at 72.  For the sake of consistency, the Court refers to these claims as arising under the Eighth Amendment.

Verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (Sotomayor, J.) (internal quotation marks omitted) (collecting cases); see also Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 324-25 (S.D.N.Y. 2006); Amaker v. Goord, No. 98 Civ. 3634, 1999 WL 511990, at *11 (S.D.N.Y. July 20, 1999).

Here, the plaintiff does not allege that CO Camacho's abuse went beyond insults and verbal harassment. There can be no claim under § 1983 without more than verbal abuse. Cf. Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) ("The claim that a prison guard called [the plaintiff] names also did not allege any appreciable injury and was properly dismissed." (citation omitted)).

This claim must therefore be dismissed.

V.

The plaintiff alleges that he quit his job in the prison as a result of the harassment he faced from CO Camacho and the other inmates. The Court construes this as a claim for

violation of the plaintiff's due process rights under the Fourteenth Amendment.

The Court of Appeals for the Second Circuit has held that an inmate in a New York State correctional facility has "no protected liberty interest in a particular job assignment." Frazier v. Coughlin, 81 F.3d 313, 318 (2d Cir. 1996) (per curiam) (citation omitted); see also Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009) (per curiam). Thus, even if the plaintiff was led to quit his job due to discrimination, he has not stated a claim upon which relief can be granted.

Accordingly, this claim must be dismissed.

VI.

The Complaint alleges in conclusory fashion that the plaintiff's Fourth Amendment rights were violated, but it does not plead any facts that would support a claim for any such violation. To the extent that the plaintiff bases this claim on the strip search performed by CO Camacho, such strip frisks "pass constitutional muster," even if the strip frisk is conducted without probable cause, so long as the search is reasonable and not abusive. Shabazz, 994 F. Supp. at 473; see also Bell v. Wolfish, 441 U.S. 520, 558-60 (1979). The strip search described by the plaintiff was routine, and verbal

harassment during the search does not cause the search to become unconstitutional.  Vaughn v. Strickland, Nos. 12 Civ. 2696, 12 Civ. 3335, 12 Civ. 2995, & 12 Civ. 3333, 2013 WL 3481413, at *6 (S.D.N.Y. July 11, 2013) (Slip Op.) (dismissing a Fourth Amendment claim where a prisoner alleged verbal abuse during an intrusive strip search).  None of the other factual allegations could plausibly support a Fourth Amendment claim, and this claim must therefore be dismissed.

## VII.

The Complaint also alleges in conclusory fashion that the plaintiff's First Amendment rights have been violated through the "thwart[ing] of the grievance process." (Am. Compl. at 9.) However, the failure to respond to a prisoner's grievance does not constitute a First Amendment violation, Mimms v. Carr, No. 09 Civ. 5740, 2011 WL 2360059 at *10 (E.D.N.Y. June 9, 2011) (collecting cases), and none of the plaintiff's other factual allegations support a plausible claim under the First Amendment.

This claim must therefore be dismissed.

VIII.

Finally, the plaintiff's claim against the defendants for failure to protect him from physical harm must also be dismissed—although without prejudice and with leave to replead.

Prison officials have a duty to protect inmates from violence or coerced sexual acts at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (per curiam). However, an inmate's constitutional right to protection is only violated where the failure is "sufficiently serious" and the official has acted with "deliberate indifference." Farmer, 511 U.S. at 834. Whether a failure was "sufficiently serious" is an objective inquiry; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." Id. (citation omitted). The second prong, "deliberate indifference," requires the plaintiff to allege that the defendants knew of and disregarded a substantial risk of serious harm to the plaintiff. Id. at 835-36; Hayes v. New York City Dept. of Corr., 84 F.3d 614, 620-21 (2d Cir. 1996); Zimmerman v. Macomber, No. 95 Civ. 0882, 2001 WL 946383, at *5-6 (S.D.N.Y. Aug. 21, 2001).

It is unnecessary to decide whether any alleged harm was sufficiently serious because the plaintiff has not alleged facts

sufficient to show that any of the defendants acted with deliberate indifference.  Cf. Parris v. N.Y. State Dept. of Corr. Servs., 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013); Lee v. Artuz, No. 96 Civ. 8604, 2000 WL 231083, at *5 (S.D.N.Y. Feb. 29, 2000).

Specifically, the plaintiff has not alleged that the defendants had actual knowledge of a risk before the harm occurred.  The plaintiff alleges that he reported abuse to Captain Santapaola, (Am. Compl. at 6), CO O'res, (Am. Compl. at 6), Captain Smith, (Am. Compl. at 7), Captain Wynn, (Am. Compl. at 7), and Warden Duffy, (Am. Compl. at 8), but the Complaint does not state when the plaintiff made these reports, whether he continued to be harassed after making them, and what, if any, harm occurred after his reports.

A complaint should provide fair notice of the plaintiff's claims and the factual allegations that support them.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although courts provide pro se plaintiffs latitude in their pleadings, courts cannot invent claims that were not pleaded.  Chavis, 618 F.3d at 170.  The plaintiff's failure-to-protect claim therefore must be dismissed.

Nevertheless, leave to amend should be freely granted.  Fed. R. Civ. P. 15(a); Twahir v. Vill. Care of N.Y., Inc., No.

13

10 Civ. 9452, 2011 WL 2893466, at *1 (S.D.N.Y. July 12, 2011). If the plaintiff elects to file a second amended complaint, it should list specifically what injury he suffered, when and how it occurred, and who was responsible for it.  In pleading his failure to protect claim, the plaintiff should include sufficient factual allegations to clarify who, if anyone, had notice of the risk of this injury as well as when and how notice was given.  Conclusory allegations are not sufficient.  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57, 570).[2]

---

[2] The defendants also argue that all of the plaintiff's claims are barred by the Prison Litigation Reform Act ("PLRA"), and that the plaintiff's claims against Defendants Duffy, Santapaola, O'Res, Smith, and Wynn are barred because the plaintiff failed to plead their personal involvement in the alleged constitutional violations.  Given that the plaintiff has failed to state a claim for which relief can be granted, it is unnecessary to reach these arguments.  However, if the plaintiff elects to file a second amended complaint, he should be mindful of the requirement in the PLRA that the plaintiff allege physical injury or the commission of a sexual act in order to recover damages for mental or emotional injury.  42 U.S.C. § 1997e(e); Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) ("Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury.").

Any further complaint should also specify how each defendant was personally involved in the violations that gave rise to the claims alleged.  Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations and internal quotation marks omitted)).

IX.

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss the plaintiff's claims is **granted** and the plaintiff's claims are dismissed without prejudice and with leave to replead.  Any amended complaint in this action is to be filed within **thirty** days of the receipt of this Memorandum Opinion.[3]

**SO ORDERED.**

**Dated:**     **New York, New York**
              **January 29, 2014**              _____/s/_____
                                                        **John G. Koeltl**
                                                **United States District Judge**

---

[3] The plaintiff may contact the Pro Se Office for any forms.